UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

TAMIKA G.[1]                        )
                    Plaintiff,      )
                                    )
        v.                          )
                                    )   Case No. 1:19-cv-01888-TWP-TAB
ANDREW M. SAUL, Commissioner of the )
Social Security Administration,     )
                                    )
                    Defendant.      )

## ENTRY OVERRULING OBJECTION, ADOPTING REPORT AND RECOMMENDATION AND AFFIRMING THE DECISION OF THE COMMISSIONER

This matter is before the Court on Plaintiff Tamika G.'s Objection to the Magistrate Judge's Report and Recommendation, (Filing No. 18), recommending that the decision of the Commissioner be affirmed. (Filing No. 17.) For the reasons set forth below, the Court **overrules** Tamika G.'s objections, **adopts** the Report and Recommendation, and **affirms** the decision of the Commissioner.

## I.   BACKGROUND

Tamika G. voiced no objections to the procedural and factual background of this matter detailed in the Magistrate Judge's Report and Recommendation, (Filing No. 18 at 2). Accordingly, the Court adopts those facts in this Entry and additional facts as necessary will be added.

In May 2015, Tamika G. filed a Title II applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. (Filing No. 8.) In her application, she asserted

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Case Management Committee of the Administrative Office of the U.S. Courts, the Southern District of Indiana uses only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

impairments of lupus, fibromyalgia, arthritis, obesity, and bilateral carpal tunnel syndrome (mild). (Filing No. 6-2, at 19.) After denials at the initial and reconsideration levels, she filed a request for a hearing before an Administrative Law Judge.  A hearing was held on January 16, 2018, before Administrative Law Judge Jody Hilger Odell ("the ALJ") in Indianapolis, Indiana.  Tamika G. appeared in person and by counsel, a vocational expert also appeared.  At her hearing, she amended her alleged onset date to April 1, 2017, due to full time work activity that reached substantial gainful levels in 2015, 2016 and early 2017.  She was thirty seven (38) years old as of her amended onset date.  On June 25, 2018 the ALJ issued a decision denying Tamika G. benefits, determining that she was not disabled.

The ALJ properly considered Tamika G.'s claim for benefits according to 20 C.F.R. § 404.1520(a).  First, the ALJ found Tamika G. met the insured status requirements of the Act through December 31, 2021.  Subsequently, at step one, the ALJ determined that Tamika G. had not engaged in substantial gainful activity since April 1, 2017, the amended alleged onset date.  At step two, the ALJ found that Tamika G. had the following severe impairments: lupus, fibromyalgia, arthritis, obesity, and bilateral carpal tunnel syndrome (mild).  (Filing No. 6-2 at 19.) At step three, the ALJ determined that Tamika G. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

Before proceeding to Step 4, the ALJ determined that Tamika G. had a residual functional capacity ("RFC) to perform sedentary work with the following limitations:

> NEVER unprotected heights, moving mechanical parts, or operate motor vehicle.
> [Tamika G.] can OCCASIONALLY: climb ramps and stairs; balance; stoop; kneel;
> crouch; crawl.  She can NEVER: climb ladders, ropes, or scaffolds.  [Tamika G.]
> can FREQUENTLY perform handling and/or fingering bilaterally.  She must have
> the option to sit or stand every 30 minutes, assume one minute to transition.

(Filing No. 6-2 at 21 (emphases in original).)  Next, at step four, the ALJ determined that Tamika G. was unable to perform any past relevant work.

Finally, at step five, the ALJ found, in considering Tamika G.'s age, education, work experience, and RFC, that jobs existed in significant numbers in the national economy.  The ALJ determined that although Tamika G. was unable to perform any past relevant work, she could perform work, including sorter, table worker, and ink printer.  *Id*. at 27.  The ALJ concluded that Tamika G. was not disabled.  She argues on appeal that the ALJ erred by ignoring evidence of her headaches, failing to properly consider the medical opinion of a treating physician, and in evaluating her subjective symptoms.  (Filing No. 18 at 2-7.)

On August 7, 2019, Tamika G. filed a Brief in support of her appeal of the Administrative Law Judge's decision denying her applications for DIB and SSI benefits. (Filing No. 8.)  Pursuant to 28 U.S.C § 636, the Court referred the matter to the Magistrate Judge (Filing No. 16), who submitted his Report and Recommendation on June 17, 2020. The Magistrate Judge determined the ALJ adequately assessed all of Tamika G.'s functional limitations, and any error in her analysis of Tamika G.'s headaches was harmless; properly considered the medical opinion of treating physician Dr. Basom; and did not patently err in her evaluation of Tamika G.'s subjective symptoms.  Accordingly, the Magistrate Judge recommended that Tamika G.'s brief in support of appeal and request for remand should be denied. Tamika G. filed a timely objection.  (Filing No. 18.)

## II.  LEGAL STANDARD

### A.    Review of the Magistrate Judge's Report and Recommendation

A district court may assign dispositive matters to a magistrate judge, in which case the magistrate judge may submit to the district judge only a report and recommended disposition,

including any findings of fact. 28 U.S.C. § 636(b)(1)(B) (2012); Fed. R. Civ. P. 72(b)(1). *See also Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The magistrate judge's recommendation on a dispositive matter is not a final order, and the district judge makes the ultimate decision to "accept, reject, or modify" the findings and recommendations, and the district court need not accept any portion as binding. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3). *See also Schur*, 577 F.3d at 760-61.

After a magistrate judge makes a report and recommendation, either party may object within fourteen days of being served with a copy of the same. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). When a party raises specific objections to findings and recommendations made within the magistrate judge's report, the district court is required to review those objections *de novo*, determining for itself whether the magistrate judge's decisions as to those issues are supported by substantial evidence or were the result of an error of law. 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b)(3). *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). The court may, however, defer to those conclusions to which timely objections have not been raised by a party. *Schur*, 577 F.3d at 760-61. Further, if a party fails to object to a magistrate judge's report and recommendation, or objects on some issues and not others, the party waives appellate review of the issues to which the party has not objected. *Johnson*, 170 F.3d at 739.

## B.   <u>Standard on Judicial Review</u>

Under the Act, a claimant may be entitled to benefits only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate

that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning DIB and SSI, which are identical in most respects. *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(i). The Court will take care to detail any substantive differences that are applicable to the case but will not always reference the parallel section.

and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III.   DISCUSSION

In her Objection to the Report and Recommendation, Tamika G. argues that the Magistrate Judge erred in calling the ALJ's ignorance of her headaches a "harmless error," erred in the assessment of the treating physician opinion, and erred in not finding that the ALJ failed to articulate her application of SSR 16-3p in accessing Tamika G.'s symptoms. (Filing No. 18.) The Commissioner did not respond to the Objection. The Court will discuss each objection in turn.

**A.**   **The ALJ Did Not Ignore Evidence of Headaches and Any Error is Harmless**

Tamika G. argues the ALJ was required, but failed, to discuss her headaches when making her RFC determination before proceeding to Step 4 in the sequential evaluation process. As noted by the Magistrate Judge, Tamika G. improperly conflates symptoms and the diagnosis of an impairment with functional limitations. (Filing No. 17 at 4.) While Tamika G. correctly recognizes that an ALJ must consider all of a plaintiff's impairments in assessing RFC and ability to engage in and maintain employment, including those that are not severe, Tamika G. cites to no specific findings in the record of functional limitations that the ALJ failed to address.

At step two, the ALJ found that Tamika G.'s severe impairments included lupus, fibromyalgia, arthritis, obesity, and mild bilateral carpal tunnel syndrome. (Filing No. 6-2 at 19.) In her appeal and objection, Tamika G. argues the ALJ ignored her frequent complaints of and treatment for headaches. (Filing No. 8 at  22.) She contends the ALJ made only one reference that she reported a new onset of headaches in May 2017—and failed to address them as a medically determinable impairment. *Id*. at 23.  Contrary to Tamika G.'s assertions, the ALJ complied with the agency's regulatory requirements by giving specific reasons for evaluating Tamika G.'s symptoms, and provided an evidentiary basis for her symptom evaluation findings (Filing No. 6-2 at p. 21-25.)  In discussing Tamika G.'s arguments surrounding her pain, symptoms and medical

source opinions, the ALJ cited Tamika G.'s testimony that "she reported a new onset of headaches in May 2017, and expressed concern over back and hip pain in June 2017. (Filing No. 6-2 at 22.)

As noted above, the ALJ is instructed to consider a claimant's medications and response to treatment when evaluating subjective symptoms. At her hearing, when the ALJ asked about headaches, Tamika G. testified that she got headaches from being in the sun too long, and from taking Plaquenil medication. (Filing No. 6-2 at 50.) She testified that she got the headaches once a week, and on those days, had to skip work, and she took medication for headache pain. *Id*. In the decision, the ALJ considered that Plaquenil medication was stopped a few months later, in July 2017, due to concerns about the side effects, which included eye problems and headaches (Filing No. 6-2 at p. 22.) This evidence reasonably cast doubt on Tamika G.'s claim that she had a disabling degree of limitation related to headaches. Based on these findings, the Court can trace the ALJ's logic for concluding that Tamika G. would have been able to sustain work with certain limitations.

Moreover, the Court agrees with the Magistrate Judge that even if it was error for the ALJ to fail to discuss Tamika G.'s headaches and their impact in more detail, she has not shown that this omission is grounds for remand. This is because the ALJ evaluated all of Tamika G.'s impairments, as well as her subjective symptoms, and concluded that Tamika G. should be limited to sedentary work with many additional postural, environmental hazard, and manual limitations. (Filing No. 6-2 at 21.) The Court concurs with the Magistrate Judge that Tamika G. has not explained what further limitations her headaches may have required. She cites no evidence of any limits related to headaches that the ALJ left out, and cites no medical source opinions that the ALJ failed to consider. Tamika G. bears the burden of production and persuasion at steps one through four. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability

unless he furnishes such medical and other evidence of the existence thereof."); 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are . . . disabled."); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008). Because she points to no evidence of any additional limitations that were supposedly ignored and cites no medical source opinions that the ALJ failed to consider, any error was harmless.

**B.**     **The ALJ Gave Proper Consideration to the Treating Physician**

Next, Tamika G. contends that while the ALJ did summarize her treating physician's opinion, she failed to provide an adequate explanation as to why his opinion was only given partial weight and not deemed reliable in relation to his recommended physical limitations. Specifically, Tamika G. challenges the evidence regarding her absenteeism and the total duration that she could sit, stand, and/or walk during an eight-hour workday. (Filing No. 8 at 26.) Moreover, Tamika G. argues that the ALJ's analysis "wholly fails to recognize the special deference that must be attributed to the treating medical source opinions when the ALJ elected not to accord them controlling weight." (Filing No. 8 at 28.)

In *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) (quoting 20 C.F.R. § 404.1527(c)(2)), the Seventh Circuit held that a "treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record." *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott*, 647 F.3d at 739 (citing *Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011); *Campbell*, 627 F.3d at 306). "And even if there had been sound reasons for refusing to give [a treating physician's] assessment controlling weight, the ALJ still would have been required to determine what value the assessment did merit." *Scott*, 647 F.3d at 740 (citing *Larson v. Astrue,*

615 F.3d 744, 751 (7th Cir. 2010)).  "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Scott*, 647 F.3d at 740 (citing *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009)); *see* 20 C.F.R. § 404.1527(c).  However, so long as the ALJ "minimally articulates" her reasoning for discounting a treating source opinion, the Court must uphold the determination.  *See Elder v. Astrue,* 529 F.3d 408, 415-16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the relevant factors laid out in 20 C.F.R. § 404.1527).

The Commissioner argues that the ALJ did not model her RFC finding on the opinion of any one doctor, but rather on the record as a whole and contends that the ALJ adequately explained her reasoning for giving partial weight to Dr. Basom's opinion, noting where it was inconsistent with Dr. Basom's own treatment notes and examination findings, as well as other doctors' treatment and examination findings and Tamika G.'s part-time work performance.  (Filing No. 13, at 13-14.)

As explained by the Magistrate Judge in his recommendation, the RFC finding is the responsibility of the ALJ, and in making that finding, the ALJ must build a logical bridge from her evidence to her conclusion.  *See*, e.g., *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) ("In rendering a decision, an ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." (Internal citation and quotation marks omitted)).  The ALJ need not model her RFC finding on any one doctor's opinions, but rather may base it on the entire record.  And that is precisely what the ALJ did in this case.  Here, the ALJ built a logical bridge from the evidence to her conclusion that Tamika G. could perform sedentary work, subject to many postural, environmental hazard, and

manual limitations. The ALJ's RFC is supported by substantial evidence, and the ALJ adequately explained why controlling weight was not given to Dr. Basom's opinion.

**C.**     **The ALJ Properly Considered Subjective Symptoms**

Finally, Tamika G. argues the ALJ failed to articulate her application of SSR 16-3p in assessing Tamika G.'s symptoms. She does not deny that the ALJ made a valiant attempt to satisfy the requirements of SSR 16-3p by including the language of that ruling and sections of discussion of activities of daily living and treatment methods. (Filing No. 8 at 32.) However, she argues that the ALJ's "justifications in these discussions are faulty and unsupported." *Id.* In her Objection, Tamika G. argues the Magistrate Judge only refers to her activities of daily living and conservative care, finding the ALJ's discussion to be not patently wrong.

Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). An ALJ's credibility determination is not patently wrong if it cites to specific reasons in the record. *Burmester*, 920 F.3d at 510-11; *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016) (A credibility determination "tied to evidence in the record" may not be disturbed as patently wrong.). If a fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms," including the regulatory factors relevant to a claimant's symptoms, such as daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other

symptoms. SSR 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *6-8; 20 C.F.R. §
404.1529(c)(3).  The ALJ need discuss only the factors "pertinent to the evidence of record."  SSR
16-3p, 2017 WL 5180304, at *8.

     As noted above, the ALJ is instructed to consider a claimant's reported activities.  The
Court agrees with the Magistrate Judge that here, the ALJ's evaluation was not patently wrong.  In
assessing Tamika G.'s credibility, the ALJ not only described her activities of daily living and
made her symptom evaluation findings after considering the appropriate regulatory factors, but
she also focused on determining the intensity and persistence of Tamika G.'s symptoms and their
impact on her functioning.  (Filing No. 6-2 at 21-25.)  The ALJ considered Tamika G.'s complaint
of disabling symptoms due to lupus, fibromyalgia, arthritis, and obesity and accessed the impact
of pain on her functioning.  The ALJ considered Tamika G.'s established care with Dr. Basom in
May 2017, when she told him about her symptoms of joint pain and swelling, swelling in her feet,
right ankle pain, shortness of breath, and headaches. (Filing No. 6-2 at 22, Filing No. 6-10 at 5.)
Dr. Basom's examinations revealed that Tamika G. had right ankle swelling and tenderness, and
treated her symptoms with steroids and an ankle brace (Filing No. 6-10 at 50.)  Tamika G.'s ankle
was "mostly better" in June 2017, with no pain or instability, and her x-rays were unremarkable.
*Id*.  Physical examination findings were normal (Filing No. 6-10 at 51.)  In July 2017, Tamika G.
stopped taking Plaquenil because of side effects with her eyes and headaches.  (Filing No. 6-10 at
6, 60.)  The ALJ reasonably considered these normal or mildly abnormal objective medical
findings to evaluate the intensity and persistence of her symptoms.  *See* 20 C.F.R. §
404.1529(c)(2).  The ALJ also considered Tamika G.'s treatment regimen, which was routine and
conservative in nature, consisting of various oral medications to relieve symptoms, as well as
recommendations for injections, home exercises, rest, and braces for the ankle and wrists.  (Filing

No. 6-2 at 24.) The ALJ also noted that Dr. Basom found Tamika G.'s symptoms responded well and improved with treatment *Id*.

After evaluating her symptoms, the ALJ limited Tamika G.'s abilities to an extraordinary degree based in part on her symptom allegations, and assessed a functional capacity for a reduced range of sedentary work that accommodated a variety of postural, environmental hazard, and manual limits. (Filing No. 6-2 21-25.) For example, the ALJ considered treatment notes from Dr. Basom and Dr. Sahai which documented that a few exacerbations were induced by Tamika G.'s light exertion work at the T.J. Maxx retail store, and her condition improved with rest (Filing No. 6-2 at 25.) The ALJ explained that, for this reason, she limited Tamika G. to sedentary exertion work, rather than light. *Id*. The ALJ also noted that Tamika G.'s improvement with conservative treatment and rest, her admitted activities of daily living, and her unremarkable lab tests and diagnostic imaging supported the ALJ's conclusion. *Id*. Thus, while the ALJ acknowledged that Tamika G. experienced some level of symptoms and limitations for a greatly reduced range of sedentary work, she was not completely disabled by her symptoms. *Id*.

The ALJ also considered Tamika G.'s range of activities despite her symptoms, including personal care, preparing simple meals, household chores, shopping in stores, and attending church regularly (Filing No. 6-2 at 23-24.)

Thus, the Court determines the ALJ reasonably considered Tamika G.'s activities, medication use, treatment, and other measures for symptom relief when assessing her symptoms. Accordingly, remand is not appropriate on this issue.

## IV.  CONCLUSION

The Report and Recommendation sets forth in detail an analysis supporting that the ALJ adequately assessed all of Tamika G.'s functional limitations, and any error in her analysis of

Tamika G.'s headaches was harmless. The ALJ properly considered the medical opinion of treating physician Dr. Basom; and did not patently err in her evaluation of Tamika G.'s subjective symptoms.  As a result, the Court agrees with the Magistrate Judge's conclusions and finds that the ALJ's decision was supported by substantial evidence at each step of the sequential evaluation process and that the ALJ sufficiently explained the bases for each decision.  For the reasons stated above, Tamika G.'s Objection to the Report and Recommendation, (Filing No. 18), is **OVERRULED,** the Court **ADOPTS** the Magistrate Judge's Report and Recommendation, (Filing No. 17), and the decision of the Commissioner is **AFFIRMED**.

   **SO ORDERED.**

Date: 10/26/2020

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
Office of the Regional Chief Counsel, Region V
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov